**JUDICIAL WATCH, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, Defendant.**

**No. Civ.A. 95–133(RCL).**

United States District Court,
District of Columbia.

Dec. 22, 1998.

Larry Klayman, Washington, DC, for plaintiff.

Marina Utgoff Braswell, Asst. U.S. Attorney, Bruce R. Hegyi, Asst. U.S. Attorney, William Mark Nebeker, Asst. U.S. Attorney, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on various discovery motions filed by the plaintiff, Judicial Watch, against the defendant Department of Commerce (DOC) and a number of nonparties. The several motions will be considered seriatim, after a brief review of the factual background.

## I. GENERAL FACTUAL BACKGROUND

Plaintiff Judicial Watch filed three Freedom of Information Act (FOIA) requests with the DOC in the fall of 1994 seeking documents regarding the alleged sale of seats on DOC foreign trade missions in exchange for large donations to the Democratic National Committee (DNC). Having received no response from the DOC, Judicial Watch filed this FOIA action on January 19, 1995. On May 17, 1995, the DOC released some 28,000 pages of documents and withheld about one thousand others.

On February 1, 1996, this Court denied the DOC's first motion for summary judgment, finding the agency's *Vaughn* index to be insufficient to support judgment as a matter of law and also authorizing discovery on the issue of the adequacy of the DOC's document search. The DOC filed a revised *Vaughn* index in April of 1996 along with a second motion for summary judgment. The Court denied the motion as to the adequacy of the search on August 7, 1996.

On September 5, 1996, the Court granted in part and denied in part the remainder of the DOC's motion as to the agency's withholding of documents pursuant to various FOIA exemptions. The Court found 153 of the 306 documents withheld under Exemption 5 to have been unlawfully withheld and ordered their production; summary judgment was granted for the DOC as to all other documents accounted for in the revised *Vaughn* index. The Court subsequently granted Judicial Watch's motion to reconsider, reviewed all of the withheld documents *in camera*, and will reinstate the September 5, 1996 ruling in a separate order issued this date.

Since Judicial Watch began its discovery in the fall of 1996, it has consistently and persistently uncovered evidence of misconduct and unlawful withholding of documents by the DOC.[1] It has been demonstrated that the

---

1. A review of much of that discovery is included in another memorandum opinion issued this date concerning the DOC's motion to enter judgment against itself.

DOC wrongfully withheld documents, destroyed documents, and removed or allowed the removal of others, all with the apparent intention of thwarting the FOIA and the orders of this Court. As if the agency's own conduct were not reprehensible enough, its counsel has also repeatedly strayed far outside the boundaries of professional conduct (although not without some provocation by counsel for Judicial Watch).

In this context, the DOC filed a motion for entry of judgment against itself on August 12, 1997, which Judicial Watch vehemently opposed, and which the Court will deny in a separate memorandum opinion issued today. The denial of that motion requires that the Court deal with various pending discovery motions identified by the plaintiff as still in need of resolution. The various motions will be considered in the order presented in Plaintiff's List of Outstanding Motions, filed September 30, 1998.

## II. MOTIONS

### A. *Ginger Lew Motion*

In February of 1997, Judicial Watch arranged through DOC counsel to take the deposition of Ginger Lew, former DOC General Counsel, on March 5, 1997. On March 3 or 4 (the parties offer different accounts), plaintiff contacted Ms. Lew's personal attorneys to inquire if they would accept service of a subpoena *duces tecum* on her behalf. Ms. Lew's counsel refused to accept the subpoena, although they offered that Lew would appear "voluntarily" and also allegedly offered to abide by Federal Rule of Civil Procedure 45, which dictates compliance of a nonparty with a subpoena. Judicial Watch, suspecting that Ms. Lew would later claim not to be subject to court process for want of service of the subpoena, refused to conduct the deposition without first serving the subpoena and canceled the deposition. Nevertheless, the next day Ms. Lew, her counsel, and DOC counsel appeared at the offices of Judicial Watch. Rather than speak to his visitors in person, Judicial Watch's counsel delivered them a letter and ordered them to vacate the premises or be removed as trespassers. Ms. Lew and her counsel then returned to the attorneys' office and communi-

cated to Judicial Watch that Ms. Lew would be available for service of the subpoena at the office that day. Eventually, Judicial Watch did execute service of the subpoena on Ms. Lew at her attorneys' office, and a deposition was held on March 12, 1997.

When the deposition finally went forward, counsel apparently continued to bicker amongst themselves. Judicial Watch alleges that DOC counsel and Ms. Lew's counsel improperly "coached" the witness through so-called "speaking objections" and unilaterally terminated the deposition. Counsel for Ms. Lew and the DOC deny such allegations and claim that they merely temporarily adjourned the deposition, which had already lasted until after six o'clock in the evening (it began at ten in the morning) and, according to counsel for Judicial Watch, would require several more hours for completion.

After the deposition, a number of motions were filed, including a motion for sanctions by Judicial Watch, a motion to terminate the deposition by counsel for Ms. Lew, a motion for sanctions by Ms. Lew, and a motion by Judicial Watch to delete from the record certain references to a sanction that its counsel had received in an unrelated case. The Court will decline to impose sanctions on either side, although not because the behavior from either was satisfactory in the least.

First, the Court will have no tolerance for the kind of service games played by Ms. Lew and her counsel. Judicial Watch was not bound to accept Ms. Lew's "voluntary" appearance at the deposition, because, in this very litigation, nonparties who were not served with subpoenas have refused to produce all documents requested by Judicial Watch. Why a high-level government employee like Ms. Lew would play these games, usually reserved for con artists and hooligans, is impossible for the Court to fathom. Unfortunately, however, Ms. Lew's efforts to take advantage of the discovery rules are not atypical of the want of good faith that seems to pervade this litigation.

It is nevertheless true, however, that Ms. Lew was entitled to object to a subpoena served only one or two days before her scheduled deposition. *See* Fed.R.Civ.P.

45(c)(3)(A)(i); *cf.* Local Rule 208 (requiring five days for notice of deposition to be "reasonable"). If the lawyers in this case would demonstrate the minimal level of professional courtesy to one another, the Court thinks that these types of problems could be avoided. However, under the circumstances, Ms. Lew should have accepted the subpoena and filed written objections or moved this Court to quash or modify the subpoena to allow her reasonable time to prepare for the deposition, as provided for in Federal Rule of Civil Procedure 45. The parties and nonparties involved in this litigation must begin to understand that they are required to comply with the rules of civil procedure unless this Court orders otherwise. The frequency with which the litigants in this case appear to believe themselves free to comply or not comply with the discovery rules as they see fit is exasperating, and it should cease forthwith.

The deposition of Ms. Lew will be permitted to continue before the Magistrate Judge. Ms. Lew's legitimate objections to Judicial Watch's far-ranging questioning may be considered and enforced by the Magistrate Judge.

Each of the four motions filed in regard to the deposition of Ms. Lew will be denied.

### B. *Melinda Yee Motions*

Plaintiff's Motion for Order to Show Cause Why the Testimony of Carola McGiffert Concerning Melinda Yee Materially Contradicts Defendant's Notice of Discharge of Obligation Pursuant to its Representation at December 6, 1996 Status Conference was filed April 9, 1997. A nearly identically titled motion regarding the testimony of Dawn Evans Cromer was filed June 25, 1997. Both motions will be denied.

These two motions arose from the representations of DOC counsel following a status conference held December 6, 1996, at which the Court asked for the names of the persons responsible for searching the office of Melinda Yee for documents responsive to Judicial Watch's FOIA requests. On December 8, 1996, DOC counsel filed a notice with the Court naming Dawn Evans Cromer, Beth Bergere, and Carola McGiffert as having had "some direct responsibility" for searching Ms. Yee's office. Subsequent depositions of Ms. McGiffert and Ms. Cromer, however, revealed that the three women had not searched Ms. Yee's office and had not been alerted by the DOC that their names were being given to the Court, much less asked if they had in fact searched the office.

Judicial Watch's request that the DOC show cause why the testimony of witnesses differs from counsel's representation is a strange creature. A host of traditional discovery methods are available to Judicial Watch if it wants to explore inconsistencies in testimony or representations by counsel, including written interrogatories, requests for admissions, and in rare instances redeposing of witnesses. Of course, in this instance, plaintiff is not unsatisfied with the testimony of the two witnesses, and therefore has no reason or basis for redeposing Ms. McGiffert or Ms. Cromer. Instead, Judicial Watch seeks some defense or explanation from DOC's counsel. The Court feels that an order to show cause is not appropriate here. Disciplinary action and sanctions issues regarding the parties' conduct *up to this point* will be addressed at a later stage when the Court addresses the issue of attorney's fees and litigation costs; any *future* misconduct in the discovery context will be handled by the presiding Magistrate Judge.

Consequently, the plaintiff's motions will be denied.

### C. *William Ginsberg Motion*

On March 21, 1997, Judicial Watch filed a Motion for Order to Show Cause against Peter R. Ginsberg, counsel for former Assistant Secretary of Commerce William Ginsberg. Judicial Watch contacted Peter Ginsberg on March 7, 1997 and asked him to accept service of a subpoena *duces tecum* on behalf of his client, William Ginsberg. Plaintiff's counsel and Peter Ginsberg then had some correspondence (whether by fax or phone or both is unclear) in which Peter Ginsberg explained that he would not be available to accept service for the deposition date suggested by Judicial Watch. Instead, Peter Ginsberg requested a copy of the com-

plaint in this action so that he could evaluate the relevancy of the requested documents (which consisted primarily of a voluminous diary kept by William Ginsberg while at the DOC). In an affirmation to the Court, Peter Ginsberg also suggested that he might invoke some unidentified privilege based on the personal nature of some of the entries.

 The Court makes two observations. First, it is not appropriate for a litigant to unilaterally determine what documents to produce in response to a valid subpoena *duces tecum;* if a nonparty objects to the subpoena, it may file written objections, move to quash or modify the subpoena, or move for a protective order. Second, the Court is unaware of any privilege protecting documents from discovery because of their "personal content."

 That said, Judicial Watch's motion is not timely and must be denied. William Ginsberg has never been served with a subpoena, and consequently the Court cannot compel him to comply with it. Nor can the Court compel Peter Ginsberg to accept service on his client's behalf, at least not without some showing of circumstances more grave or unusual than any established here. Nevertheless, why a former high government official and his attorney would engage in service-of-process games is simply inexplicable. Presumably, Mr. Ginsberg is a professional person, who is now employed in a responsible position, and yet he gives the appearance of a scofflaw, someone who must be hunted down in the middle of the night by a process server or a marshal. When he finally does appear, Mr. Ginsberg simply must recognize that any legal arguments that he makes will be subjected to very close scrutiny by the Court.

The DOC will be ordered to provide Judicial Watch with William Ginsberg's last known address so that Judicial Watch can effectuate personal service of the subpoena. The DOC will also be ordered to submit a memorandum of law stating its position on the issue of whether the diary maintained by

William Ginsberg is an agency record or "personal" papers. *Cf. Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). If the DOC's position is that these documents are agency records, the agency should reacquire them and process them according to its FOIA procedures, including release or indexing of all responsive documents. If the DOC considers the diary to be personal papers, as William Ginsberg apparently does, then Judicial Watch will have to serve the subpoena and the Court will entertain a motion to quash or for a protective order if William Ginsberg wishes to contest the subpoena.

### D. *DNC Minority Donor List*

On May 29, 1997, counsel for the DOC filed a Notice to the Court stating that, in the May 28, 1997 deposition of Graham Whatley, it had been discovered that a list of minority donors to the DNC had been found during the DOC document search and revealed to DOC lawyers, but never disclosed to Judicial Watch. Counsel for the DOC initially claimed ignorance of the document's existence, but on July 3, 1997 they filed a Supplemental Notice to the Court attributing their failure to produce the clearly responsive document to a combination of miscommunication and poor memory on the part of the two Assistant United States Attorneys working on the case.[2]

Judicial Watch refers to these notices to the Court in its list of pending discovery matters, although no motion appears to have been filed. Because no motion is pending, the Court will not further address the matter here.

### E. *John Huang Security Briefings Motion*

On May 2, 1997, Judicial Watch filed a sealed Motion for Order to Show Cause relating to apparent discrepancies between evidence taken in this case and press reports about the number of security briefings that John Huang may have received while at the

---

2. The details of this series of events are set forth in the Court's opinion denying the DOC's motion

for entry of judgment, also issued this date.

DOC. The DOC has adequately explained the situation, and in fact no discrepancy exists. The other matter raised in the motion concerned the desk calendar of John Huang, which is dealt with below. Plaintiff's motion will therefore be denied.

### F. *June 1997 Motions*

In June 1997, Judicial Watch moved the Court for a status conference to consider a number of outstanding discovery issues. Although the request for a status conference has long since been mooted, the other matters raised and renewed in plaintiff's motion require resolution. Many of these same issues were also addressed in papers filed following the status conference held June 27, 1997, and the two sets of filings will be considered together.

#### 1. Computer Files

In its June 4, 1997 request for a status, plaintiff requested the production of documents recovered by the DOC Inspector General (IG) pursuant to this Court's order of December 6, 1996 ordering the IG to seize and search the computers of identified DOC employees. This request is moot following the processing of the documents by the DOC and the release or *Vaughn* indexing of all responsive documents on March 4 and 12, 1997.[3]

#### 2. Desk Diary of John Huang

■ Judicial Watch also requested that the Court order the production by the DOC or its counsel of a legible copy of the desk diary maintained by John Huang while at the DOC. A partially illegible copy was released to Judicial Watch, but its requests for a legible copy have been repeatedly denied by the DOJ, which now has custody of the diary for the purposes of a criminal investigation. After consideration of the DOJ's opposition to plaintiff's subpoena and motion to compel, the Court is of the opinion that making the diary available to Judicial Watch for inspection and copying at the Department will not unduly impair any investigative or law en-

forcement interests of the DOJ, and therefore the Court will order the Attorney General to either (1) provide Judicial Watch with a legible copy of the diary or (2) allow it access to the diary for the purposes of inspection and copying.

#### 3. Huang Documents Released by the DNC

Judicial Watch further requested production of "thousands of pages" of documents released by the DNC and believed to have been removed from Huang's files at the DOC. The Court is unable to determine the precise scope of this request, and the request will be denied without prejudice to renewal. If Judicial Watch chooses to pursue this matter, it may do so during the redeposition of John Huang, or it may issue and serve a new subpoena identifying the documents or categories of documents that it seeks.

#### 4. Telephone, Facsimile, and Mail Records

■ Judicial Watch also renewed its request for production of all DOC "telephone, facsimile, and mail records showing communication with the White House, the DNC, and other outside entities, and with the home of Ron Brown, regarding the issues in this case." This is a tremendously overbroad discovery request, and plaintiff's inclusion of the phrase "regarding the issues in this case" does little to remedy that overbreadth. The DOC's subsequent interpretation of the wording, while perhaps cramped, cannot be a surprise given the breadth of the request on its face. Although Judicial Watch will be allowed to pursue this general line of inquiry into the creation of responsive documents, the plaintiff must establish proper foundations for its requests and must formulate them in a reasonable way. While the Court is certainly disturbed by the behavior of the agency in this litigation, the Court similarly has limited patience for Judicial Watch's persistent attempts to stretch its discovery beyond the proper bounds of the FOIA. The close supervision of the Magistrate Judge

---

**3.** To the extent that these and other documents are not subject to any pending motion for summary judgment (because they were processed

after the filing of the DOC's second motion for summary judgment), the parties will be directed to file dispositive motions.

should alleviate these problems, so that an acceptable level of professionalism is observed by both sides.

### 5. Secretary Brown's Briefing Books, Calendars, and Daily Schedules

Plaintiff further requests *all* of the briefing books, calendars, and daily schedules of the late Secretary Brown. Why plaintiff feels entitled to *all* of these documents is a mystery. Plaintiff is entitled to all those documents responsive to its FOIA requests that are not properly withheld pursuant to a statutory exemption. If the briefing books, calendars, and daily schedules of Secretary Brown contain as-yet-unreleased information fitting this description, the agency is required to produce it. Likewise, if any of this material might lead the plaintiff to admissible evidence regarding the adequacy of the DOC's search or the possible unlawful destruction or removal of documents, the DOC shall produce it upon the service of a legitimate discovery request by Judicial Watch. If the plaintiff is still not satisfied that the DOC has complied with this order, it must demonstrate to the Court that documents are being unlawfully withheld, not merely posit that documents *may* be being wrongfully withheld. The agency's history of misconduct in this case does much to support plaintiff's various claims of mishandling of documents, but it cannot sustain such claims by its own force alone.

### 6. Documents Removed from Secretary Brown's Office After His Death

Plaintiff also requests the production of all responsive documents taken from Secretary Brown's office after his death. Certainly, the DOC is already under an obligation to release or index any such responsive documents in its possession (and it claims to have already processed the documents referred to in plaintiff's request). Again, the plaintiff must present some indication, beyond a mere reference to the DOC's blemished record in this litigation, upon which the Court could base a further order compelling production of a particular document or set of documents. The Court is not unwilling to issue such an order, but it must have a proper basis on which to act.

### 7. David Rothkopf Documents

Judicial Watch additionally requests that the Court review *in camera* all documents that David Rothkopf removed from the DOC when he left his employment there and which he subsequently returned to the DOC. The Court has already reviewed *in camera* all documents returned by Rothkopf and withheld by the DOC, and the Court is satisfied that these documents were properly withheld under FOIA Exemption 1. However, the Court understands the concerns of Judicial Watch at least with regard to documents which have already been established to have been wrongfully removed from the DOC in violation of the FOIA. Consequently, the Court will order the production of all of the Rothkopf documents for *in camera* review by the Magistrate Judge. As discovery proceeds under the supervision of Magistrate Judge Facciola, all documents that are discovered to have been wrongfully removed from the agency shall, in addition to normal FOIA processing by the DOC, be submitted for *in camera* inspection by the Magistrate Judge.

### 8. Documents from Ira Sockowitz's Safe

Next, Judicial Watch requests the Court to inspect *in camera* all documents recovered by the IG of the Small Business Administration (SBA) from the safe of Ira Sockowitz's office at the SBA, because plaintiff is "not confident" that it has been provided with all relevant, nonprivileged materials. As with the Rothkopf documents, the wrongful removal of the Sockowitz documents justifies plaintiff's concerns. The documents have been provided to the Court; they will be reviewed, and a separate order will issue when the review is completed.

### 9. FOIA Guidelines

Judicial Watch also requests that the DOC provide plaintiff with a copy of the DOC's procedures and guidelines for responding to FOIA requests. This request is apparently moot; the DOC represents that these mate-

rials were produced to Judicial Watch before the June 27, 1997 status conference.

### 10. List of Persons Responsible for Searching the Office of Melinda Yee

Next, Judicial Watch requests a complete list of the persons responsible for searching the office of Melinda Yee. The DOC has explained that it thought Ms. McGiffert, Ms. Cromer, and Ms. Bergere to have been responsible for searching that office, but that in fact it was never searched. Plaintiff had adequate opportunity at the depositions of Ms. McGiffert and Ms. Cromer to inquire into why they did not search, who else might have searched, who their superiors were, et cetera. If Judicial Watch would like to conduct further investigation of this matter, it may move the Court to authorize additional depositions or serve interrogatories or requests for admissions on the DOC. The plaintiff cannot, however, forego the ordinary rules of discovery and ask this Court to, in essence, issue discovery queries on its behalf. This request will be denied.

### 11. Draft Declarations

Next, plaintiff requests production of draft versions of several sworn declarations submitted by DOC employees, including Anthony Das, Mary Ann McFate, Melissa Moss, Melanie Long, Barbara Schmitz, and Secretary Brown, along with the names and addresses of those persons responsible for drafting the documents. Obviously, this request raises issues at the heart of the attorney-client privilege. These complex issues are not wisely decided based on no more information than an allegation by the plaintiff. If Judicial Watch wants to pursue these drafts, it should request them by ordinary discovery methods (if it has not already done so), and if DOC declines to produce them then plaintiff may file a motion to compel and the issue will be litigated in that context.

### 12. Notes of Judith Means

Judicial Watch next requests that the Court review *in camera* the notes taken by

Judith Means, an attorney in the DOC Office of General Counsel, regarding Ms. Means' participation in the DOC's document search. Again, this request raises issues of attorney-client and other privileges that should not be decided without informed deliberation. Plaintiff may pursue those ordinary discovery means available to it, and, if necessary, the Court will decide the matter after it is briefed in a meaningful manner.

### 13. Redeposition of Jude Kearney and John Huang

■ In its June 4, 1997 filing, Judicial Watch also sought authorization by the Court to depose for a second time Jude Kearney and John Huang, both of whom were first deposed in October 1996.[4] The DOC has indicated that it does not oppose plaintiff's request.

The Court's decision to grant or deny leave to redepose a witness is guided by Federal Rules of Civil Procedure 30(a)(2) and 26(b)(2). Leave to conduct a second deposition should ordinarily be granted; the burden is on the opposing party to demonstrate that

> [1] the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; [2] the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or [3] the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2); Michol O'Connor et al., *O'Connor's Federal Rules, Civil Trials* 288 (1997); *see also Christy v. Pennsylvania Turnpike Commission*, 160 F.R.D. 51, 52 (E.D.Pa.1995). Under this standard, Judicial

---

**4.** It appears that plaintiff's request to redepose Huang has not been served on Huang's attorney. Judicial Watch shall promptly serve on Huang's counsel copies of all papers requesting that a second deposition be authorized, and Mr. Huang may move for reconsideration of today's decision within ten days of that service, if he has legitimate grounds for objection.

Watch will be authorized to depose both Kearney and Huang for a second time, although the deposition will be limited to information discoverable in the context of the unlawful destruction or removal of documents.

Because the redepositions of Kearney and Huang will be of limited scope and conducted in the presence of a Magistrate Judge, whatever burden imposed on the deponents will not outweigh the benefits of the new testimony. Had the deponents been forthright in their initial depositions (and it appears that they were not), a second deposition may not be necessary, but under the circumstances plaintiff is entitled to question Kearney and Huang generally on their role, if any, in misconduct during the document search and specifically on the evidence that has been discovered since the October 1996 depositions. The Court is of the opinion that both Kearney and Huang have a lot of explaining to do. To the extent that matters from the first deposition are discussed a second time, the deponents' own behavior has necessitated the second round of depositions, and any cumulation of evidence will not be unreasonably cumulative or duplicative, so long as it is kept within the bounds of the limited discovery permitted today. Finally, the other discovery available to Judicial Watch, although it has been fruitful, does not support a denial of leave to redepose under FRCP 26(b)(2), because only Kearney and Huang can reasonably be expected to answer many of plaintiff's questions regarding their files and the creation of documents by them and under their supervision.

Therefore, plaintiff's motion for leave to redepose Jude Kearney and John Huang will be granted.

In conjunction with its requests to redepose Kearney and Huang, Judicial Watch asks the Court to order production of various documents, including the fax from the DNC discovered in the deposition of John Ost. The Court will allow Judicial Watch to serve a subpoena duces tecum on each Kearney and Huang, setting out with particularity the doc-

uments and categories of documents requested. If Kearney or Huang objects, plaintiff may move to compel. In addition, if the DOC currently possesses the Ost fax, it will be ordered to release it to Judicial Watch or submit it for *in camera* review.

14. Plaintiff's Request for Other Additional Depositions

In its July 1997 filings, Judicial Watch also requested leave to depose several additional witnesses.

First, Judicial Watch's request that it be allowed to depose DOC officials holding the rank of GS–13 and below will be denied. Plaintiff must seek authorization from the Magistrate Judge for each additional deposition.

Second, Judicial Watch moves for leave to depose former Commerce Secretary Mickey Kantor. An identical request made while Mr. Kantor was Secretary was denied in deference to his obligations and duties as Secretary. Now, however, Mr. Kantor has left government service, and Judicial Watch may depose him.[5]

Next, plaintiff requests leave to depose former Undersecretary for International Trade Jeffrey Garten. This request will be granted. Plaintiff will also be allowed to depose Nancy Linn Patton, Deputy Assistant Secretary for Asia and the Pacific.

Plaintiff's requests to depose T.S. Chung, David Barram, Jonathan Sallet, Kent Hughes and other named and unnamed witnesses will be denied without prejudice to renewal by plaintiff with a more thorough explanation of its reasons for deposing them and particularly what evidence it hopes to obtain from these potential witnesses.

15. Peter Han Notes

Finally (as to the June 1997 motions), Judicial Watch requests an *in camera* review of notes taken by Peter Han concerning his participation in the document search. The documents have been provided to the Court,

---

5. To be clear, this deposition and all other discovery authorized by today's opinion will be conducted under the supervision of a Magistrate Judge, as explained more fully in a separate opinion issued today.

and a separate order will issue when the Court's review is completed.

### G. *Howard University Library Motions*

■ In October and November of 1997, Judicial Watch filed two motions asking the Court to compel the DOC to provide Judicial Watch with copies of a large amount of video and photographic material. Contrary to plaintiff's assertions, however, neither the FOIA nor any order of the this Court requires that *copies* of this material be produced to plaintiff; the materials need only be made reasonably available. *See* 5 U.S.C. § 552(a)(3). Therefore, because the DOC has made all of this material available in its offices for viewing by Judicial Watch, the motion to reorder release of the materials and the motion for sanctions will be denied.[6]

### H. *Donald Forest Motion*

On April 21, 1997, Judicial Watch began the deposition of Donald Forest, Director of the Greater China Region office at the DOC. According to Judicial Watch, Counsel for the DOC then engaged in a persistent use of so-called "speaking objections" to disrupt the deposition, which Judicial Watch then discontinued and filed a Motion to Compel and for Appropriate Immediate Remedies that same day. The DOC apparently has not opposed Judicial Watch's motion, although from the video deposition it is apparent that DOC counsel believed its objections to be legitimate. This motion will be granted in part and denied in part.

Unfortunately, DOC counsel's behavior at the Forest deposition is not atypical of the misconduct in which the DOC and its lawyers have engaged throughout this litigation. Nor is counsel for Judicial Watch innocent of improper behavior. At Mr. Forest's deposition, ordinary objections gave way to longer and more heated exchanges between counsel until, before the deposition was prematurely adjourned, the lawyers seemed to have forgotten entirely about the witness in favor of

verbally sparring with one another. Such behavior would be reprehensible the first time; in this litigation, it has come to be the norm. Nevertheless, the Court declines to impose sanctions at this point for two reasons. First, to the extent that plaintiff requests that DOC counsel refrain from misconduct at future depositions, the presence of the Magistrate Judge should adequately deter future misbehavior. The same deterrence also should control Judicial Watch's transgressions. If misconduct continues, then the Magistrate will handle it or, if necessary, this Court will entertain contempt motions. Second, to the extent that the motion calls for sanctions on misconduct that has occurred up to this point, the Court will defer ruling on this issue until it considers granting attorney's fees and litigation costs at the end of this case. Therefore, plaintiff's motion for "appropriate remedies" is denied.

However, plaintiff is entitled to continue the deposition of Mr. Forest, and will be granted leave to do so. The deposition will be conducted before the Magistrate Judge, and the Court expects that a higher degree of professionalism will be demonstrated by counsel for both sides.

### I. *Laurie Fitz–Pegado Motion*

■ On May 15, 1997, Judicial Watch filed a Motion to Compel and for Attorney's Fees and Costs. Plaintiff alleges that the Assistant United States Attorney formerly in charge of this litigation intentionally misrepresented who was to represent Ms. Fitz–Pegado at her deposition. In addition, counsel for the DOC appears to have been prepared to unilaterally determine which documents it would produce in response to plaintiff's subpoena duces tecum. The Court feels compelled to remind counsel, not for the first time, that the appropriate means of objecting to a subpoena is by timely written objection or by timely motion to quash or modify the subpoena. *See* Fed. R.Civ.P. 45. If the party serving the subpoena then objects, it may oppose the mo-

---

6. Apparently, some materials were mishandled by the DOC and copies were given to Howard University without retaining copies at the agency. However, the DOC claims that it has recovered all materials from Howard, copied them,

and retained the originals at the DOC. These materials also appear to have now been made available to Judicial Watch, and thus the DOC has apparently complied with its obligations concerning these documents.

tion or move to compel, and the Court, not the litigants, will determine the permissible scope of the subpoena.

However, as with the Ginsberg matter addressed above, the plaintiff has not yet served Ms. Fitz–Pegado with a subpoena, and consequently the Court is not in a position to grant a motion to compel her to testify or produce documents. Whatever merit might lie in Judicial Watch's objections to DOC counsel's behavior will be taken up at the fees and costs stage of this litigation. Insomuch as the motion requests an order prohibiting future misconduct by DOC counsel, the Court is confident that the Magistrate Judge that presides over Ms. Fitz–Pegado's deposition will keep all persons present under appropriate control.

## III. CONCLUSION

This memorandum opinion and the accompanying order resolve all pending motions in need of disposition at this point.[7] As set forth in another decision issued today, the case will now proceed with limited discovery under the supervision of a Magistrate Judge. Plaintiff is reminded that it still must obtain authorization from the Magistrate Judge for all additional depositions. More generally, the Court is hopeful that this case can now proceed in a professional and civil manner.

A separate order will issue this date.

### ORDER

This case comes before the Court on various discovery motions by the plaintiff against the defendant and a number of nonparties. Upon consideration of the various motions and the arguments offered in support and opposition thereto, and of the record in this case, and for the reasons set forth in an accompanying memorandum opinion, it is hereby ORDERED that

Plaintiff's Motion for Sanctions and Attorneys' Fees and Costs, filed March 13, 1997 and amended March 17, 1997, is hereby DENIED;

Non–Party Ginger Lew's Motion for Fees and Costs, filed March 18, 1997, is hereby DENIED;

Non–Party Ginger Lew's Motion to Terminate or Limit Deposition, filed March 18, 1997, is hereby DENIED, and it is further ORDERED that the deposition will be conducted under the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's Motion to Excise and for Appropriate Remedies, filed March 21, 1997, is hereby DENIED;

Plaintiff's Motion for Order to Show Cause Why the Testimony of Carola McGiffert Concerning Melinda Yee Materially Contradicts Defendant's Notice of Discharge of Obligation Pursuant to its Representation at December 6, 1996 Status Conference, filed April 16, 1997, is hereby DENIED;

Plaintiff's Motion for Order to Explain Why the Testimony of Dawn Evans Cromer Concerning Melinda Yee Materially Contradicts Defendant's Notice of Discharge of Obligation Pursuant to its Representation at December 6, 1996 Status Conference, filed June 25, 1997, is hereby DENIED;

Plaintiff's Motion for Order to Show Cause, filed March 21, 1997, is hereby DENIED, and it is further ORDERED that the defendant shall provide to plaintiff within 5 days of this order the last known address of William Ginsberg, and it is further ORDERED that the defendant shall submit on or before January 15, 1997 a legal memorandum setting forth its position on the issue of whether the diaries of William Ginsberg are "agency records" within the scope of the FOIA or are instead "personal papers" belonging to William Ginsberg in his private capacity;

Plaintiff's sealed Motion for Order to Show Cause, filed May 2, 1997, is hereby DENIED;

Plaintiff's request for the production of computer files recovered by the DOC Inspector General pursuant to this Court's Decem-

---

7. Although, as noted in the other decision issued today, the Court will entertain motions for orders to show cause regarding the allegations made in Nolanda Hill's testimony.

ber 6, 1996 order, raised in plaintiff's June 1997 filings, is DENIED as moot;

Plaintiff's request for an order requiring the production of a legible copy of the desk diaries of John Huang, raised in plaintiff's June 1997 filings, is hereby GRANTED and it is hereby ORDERED that the Attorney General shall either (1) produce to plaintiff a legible copy of the diary or (2) allow plaintiff access to the diary for the purpose of inspection and copying, on or before January 8, 1999;

Plaintiff's request for production of numerous documents released by the Democratic National Committee, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for production of telephone, facsimile, and mail records showing communications with the White House, the DNC, and other outside entities, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for the briefing books, calendars, and daily schedules of the late Secretary Ron Brown, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for documents removed from the late Secretary Ron Brown's office after the Secretary's death, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request that the Court review in camera all documents removed from and subsequently returned to the DOC by David Rothkopf, raised in plaintiff's June 1997 filings, is hereby GRANTED, and it is further ORDERED that the DOC shall produce all of the documents removed from the DOC by David Rothkopf for in camera inspection by Magistrate Judge Facciola at a date to be set by Magistrate Judge Facciola, and it is further ORDERED that, from this date forward, any and all discovered documents reasonably demonstrated to have been wrongfully removed from the DOC shall be submitted to Magistrate Judge Facciola for in camera review as scheduled by Magistrate Judge Facciola;

Plaintiff's request that the Court review in camera all documents recovered by the DOC Inspector General from the safe of Ira Sockowitz, raised in plaintiff's June 1997 filings, is

hereby GRANTED, a separate order to issue when the review is complete;

Plaintiff's request that the Court order production of the DOC's FOIA guidelines and procedures, raised in plaintiff's June 1997 filings, is hereby DENIED as moot;

Plaintiff's request for a complete and accurate list of persons responsible for searching the office of Melinda Yee, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for production of draft versions of sworn declarations submitted by various DOC employees, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request that the Court review in camera the notes of Judith Means, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for leave to redepose Jude Kearney, raised in plaintiff's June 1997 filings, is hereby GRANTED, and it is further ORDERED that the deposition will be conducted under the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's request for leave to redepose John Huang, raised in plaintiff's June 1997 filings, is hereby GRANTED, and it is further ORDERED that the deposition will be conducted under the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's request that the DOC produce the facsimile identified by John Ost in his deposition testimony, raised in plaintiff's June 1997 filings, is hereby GRANTED, and it is further ORDERED that the DOC shall, if it currently possesses a copy of the facsimile, produce it either to the plaintiff or to the Court if subject to a claim of exemption;

Plaintiff's request for leave to take the depositions of DOC employees holding a rank of GS–13 or below, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request for leave to depose former Secretary of Commerce Mickey Kantor, raised in plaintiff's June 1997 filings, is hereby GRANTED, and it is further ORDERED that the deposition will be conducted under

the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's requests for leave to depose Jeffrey Garten and Nancy Linn Patton, raised in plaintiff's June 1997 filings, are hereby GRANTED, and it is further ORDERED that the depositions will be conducted under the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's request to depose other named and unnamed witnesses, raised in plaintiff's June 1997 filings, is hereby DENIED;

Plaintiff's request that the Court review *in camera* the notes of Peter Han, raised in plaintiff's June 1997 filings, is hereby GRANTED, a separate order to issue when the review is complete;

Plaintiff's Request to reorder Immediate Release of Videotapes and Other Photographic Evidence Taken on Clinton Administration Department of Commerce Trade Missions, filed October 22, 1997, is hereby DENIED;

Plaintiff's Motion for Order to Show Cause, filed November 14, 1997, is hereby DENIED;

Plaintiff's Expedited Motion to Compel and for Appropriate Remedies, filed April 21, 1997, is hereby GRANTED in part and DENIED in part, and it is further ORDERED that plaintiff may continue the deposition of Donald Forest under the supervision of Magistrate Judge Facciola as set forth in a separate order issued this date;

Plaintiff's Motion to Compel and for Attorneys' Fees and Costs, filed May 15, 1997, is hereby DENIED; and it is further

ORDERED that the defendant shall file a new motion for summary judgment, with supporting affidavits and *Vaughn* index, within 30 days of the date of this order for all responsive agency records withheld from the plaintiff and not yet disposed of by this Court's decisions on previous motions for summary judgment, and that any cross-mo-

tion or opposition to such motion shall be filed 30 days thereafter.

SO ORDERED.